Bigger, J.
Plain-tiff in -his petition represents that he is unlawfully restrained of his liberty by George J. Karb, Sheriff of Franklin County, Ohio, and he attaches to his petition a copy of the commitment and cause of detention. He -avers that the restrain is without legal authority and contrary to law, in that the petitioner is not guilty -of any offense against, the laws of the United States or the state of O-hio, authorizing or justifying such restraint, and that the notary m-aking the commitment was without authority- of law to make the same. The writ having issued, the sheriff makes the following returns:
*642 “Court of Common Pleas, Franklin County, Ohio. In re Avery C. Lowe, ex parte, Plabeas Corpus, No. 5086. George J. Karb now comes and states that he is the duly elected and qualified sheriff of Franklin County, Ohio, and produces the body of Avery C. Lowe, in obedience to a writ of habeas corpus ¡heretofore attached, and states that on the 16th day of October, 1905, as said sheriff he took into 'his custody said Avery C. Lowe in obedience to a certain order of commitment that they received by him, a copy of which, marked Exhibit A, is hereto attached and made a part hereof; and then when said writ of habeas corpus was served upon him, he held said Avery C. Lowe in obedience to said order of commitment. George J. Karb, Sheriff, Franklin County, Ohio.”
Exhibit A, attached to the return, is as follows':

“To George J. Karb, Sheriff of Franklin County:

“Whereas, on the 12th day of October, 1905, in a certain action then and still pending in the Common Pleas Court of Sandusky County, in said state, wherein the State of- Ohio, ex rel Cora F. Briggs, etc., is plaintiff, and Henry Hughes et al, are defendants the undersigned George W. Bope, a notary public in and for Franklin county, Ohio., in said state, at his office in the city of Columbus, in said county and state, at the request of said plaintiff and on his behalf was taking -the depositions of witnesses in said action, and A. C. Lowe, a resident of said county of Franklin then and there appeared as a witness in behalf of said plaintiff and was sworn and examined, and upon his said examination as a witness, and while his deposition was then and there being taken, and for the purpose of making answer to the same'a part of said deposition, the following question was put to him by H. C. DeRan, counsel for said plaintiff, to-wit: ‘Were you representing any bridge company which was doing business in any county in the state of Ohio, during the period from January 1st, ’98, to January 1st, 1901?’ And the said A. C. Lowe then and there refused to answer the said question last mentioned on the ground that the answer thereto might tend to incriminate him; and thereupon the undersigned ordered the said A. C. Lowe to answer said question, which he again refused to do for the same reason, and the undersigned then and there for the said contempt of said A. C. Lowe in so refusing to answer said question, ordered and adjudged that he be imprisoned in the county jail of said county of Franklin until he submits to testify in the premises. You are therefore ordered to arrest and commit the body of said A. C. Lowe to the jail *643 of said county of Franklin, there to remain until he shall submit to testify ‘as aforesaid, and of this order make lawful service and due return.
“Given under my hand and official seal this 11th day of October] 1905.
‘.‘ George W. Bope,

“Notary Public in and for Franldin County, Ohio.”

To this return of the sheriff the petitioner demurs. The first business in any county in the state of Ohio, during the period privilege of the witness to refuse to answer any question put to him on the ground that the same may tend to incriminate him. It was a favorite mxim of the common law that nemo tenetur seipsum accusa/re. This rule that no man should be required to incriminate himself had its origin in the common law in the popular practices against-.the inquisitorial methods employed in many countries to extort confessions from those suspected of crime. This principle which was but a rule of evidence in England, took the higher form in this country of a constitutional guaranty alongside the writ of habeas corpus, the right to jury trial, freedom from unreasonable searches' and seizures and constitutional guaranties for the protection of personal rights and liberties to the people. While there is some apparent conflict of authority as to the extent of this privilege and the circumstances under which it may be invoked, I think the question in this state has not any uncertainty, but must be regarded ‘as settled by the decision in Warner v. Lucas, 10th Ohio, 336. The syllabus is:
“The witness is not bound to answer any question that will directly or indirectly criminate himself, although in such case the-witness is his own judge, yet he is liable to an action by the party if his refusal to testify be willful and his excuse false.
That-was an action brought by one who claims to have been injured by his refusal to testify—an action for damages. It was sought to prove what the questions were which were propounded to the witness and which he refused to answer, and also to prove that any answer which he might have made could not possibly tend to incriminate him. ■ This the trial court refused to *644 allow on the ground' that the witness was the sole judge as to whether or not bis answers would, incriminate him. And this the court held to be the true ruling in so far as the witness was concerned, but that another rule was to be applied in an action brought to recover damages for an injury suffered by reason of his false and willful refusal to testify; that while it might be extremely difficult to prove that the answers which he might make would not tend to incriminate him, yet that, if that could be proven, it in no way conflicted with the full recognition and preservation of the privileges of the witness to refuse to give any -testimony which might tend to incriminate himself.
That this is the rule in Ohio seems to be recognized by all the text-writers. Indeed, to me -this seems to be the -only practical rule. If the privilege of the witness is to be of any real value to him, how can a magistrate or court determine whether the answer will or will not tend to incriminate him, if the knowledge of -the crime be located in the breast of the witness, unless in some way 'and by some means knowledge is obtained of the nature of the crime, the disclosure of which the prisoner seeks to avoid. The rule, according to all authorities, extends not merely to the right to refuse to answer the question, the answer to which will -alone be sufficient to disclose his knowledge, but extends -as well to answers which may furnish a link in the chain of evidence to- convict him of a crime of which the court knows nothing.
In -this particular case there is nothing whatever before the court by which 'any judgment can be formed upon the question as to whether or not -an answer to this question might tend to. criminate the witness. The burden is not upon the petitioner but upon the sheriff to show that the- prisoner is lawfully detained, and puts upon -him the burden of showing that-he-was lawfully committed, as a contumacious witness, and unless it appears in some way upon the record that his refusal was contumacious, then he was not in contempt and could- not be lawfully imprisoned for his refusal to answer. There is nothing in the record which discloses the nature of this action in which he was being examined as a witness, and upon the demurrer *645 the court is, of course, confined to the record. He was called upon to disclose the fact as to whether or not he was acting as an agent for any bridge company during a certain period. There are crimes in which the proof of agency is essential to a conviction, and for aught that appears the answer to this question might furnish material evidence against the witness in a prosecution for crime. These considerations are sufficient to dispose of, the case without discussing the other objections which are made to the sufficiency of this return.
T. J. Keaivng, for Lowe.
F. 8. Monnett, contra.
If it be said this rule has a dangerous latitude, the answer is pointed out by our own Supreme Court in the case of Warner v. Lucas thus:
“There is certainly but little danger that witnesses will refuse to answer questions under oath upon the ground that their answer might incriminate them, unless such be the fact. Besides exposing themselves to liability in a civil action, the effect upon their own reputations of claiming the privilege is so disastrous that but little danger is to be apprehended from the parties of their privilege. Men who have not committed a crime will seldom state under oath that they are afraid to answer questions for fear it will expose them to criminal prosecution. ’ ’
The rule laid down in the case of Warner v. Lucas has not been reversed or modified by our Supreme Court, and must be regarded as the rule in such cases in this state. For this reason the finding is that the return of the sheriff does not state facts sufficient to show that the petitioner is lawfully restrained of his liberty, and the demurrer thereto is sustained. I will make the same ruling in the other case.